UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TLM SUFFOLK ENTERPRISES, INC.,

               Plaintiff,

          - against -

TOWN OF BROOKHAVEN,

              Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2548 (PKC) (LGD)

PAMELA K. CHEN, United States District Judge:

      Plaintiff TLM Suffolk Enterprises, Inc. ("TLM Suffolk") brings this action against Defendant Town of Brookhaven (the "Town") seeking declaratory, injunctive, and monetary relief regarding its use of real property located at 1520 Montauk Highway (the "Real Property") as a "public garage."  TLM Suffolk alleges that the Town of Brookhaven has violated its due process and equal protection rights under the Fifth and Fourteenth Amendments.  Plaintiff also alleges that Defendant's actions amount to a regulatory taking of the Real Property without just compensation.  For the reasons below, the Court grants Defendant's cross-motion for summary judgment, denies Plaintiff's motion for summary judgment, and dismisses the Complaint.[1]

## BACKGROUND[2]

      Plaintiff is the owner of the Real Property, which is located at 1520 Montauk Highway in East Patchogue.  (Defendants' Counter-Statement of Material Facts Pursuant to Local Rule 56.1

---

[1] The Court also denies Plaintiff's request for oral argument as unnecessary.

[2] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendant's Local Rule 56.1 Statement (Dkt. 35-1), the Court may

("Def. 56.1"), Dkt. 35-1, at 1.)  The Real Property has been used as a "public garage" since the early 1950s.  (*Id.*)  The Town of Brookhaven's 1937 Zoning Code defined "public garage" as "a building other than a private garage, used for housing or care of gasoline or other power driven vehicles, or where such vehicles are equipped for operation, repaired or kept for remuneration, hire or sale."  (*Id.* at 3.)  Further, the Zoning Code also permitted a "public garage" to have an "[a]ccessory use on the same lot with and customarily incidental to any of the" permitted uses. (*Id.* at 2.)  Plaintiff alleges that "[i]n 1937, 'outdoor storage of motor vehicles and an open air car lot' would be an accessory use to a 'public garage[,]'" but Defendant disputes this fact.  (*Id.* at 3.)[3] Plaintiff  also alleges that the 1937 zoning definitions for "public garage" and "accessory use" were still in effect in the 1950s, although Defendant notes that it is not clear whether the 1937 Town Code was in effect in the 1950s.  (*Id.* at 2.)[4]

The Town's Building Division records were destroyed in 1959, thus certificates of occupancy issued before that year are not available.  (*Id.* at 3–4 (citing Brookhaven Town Code ("Town Code") § 85-16).)[5]  The Town Code therefore provides for "certificates of existing use"

---

deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).

[3] Although this fact is disputed, as the Court will discuss *infra*, the fact is not material for purposes of resolving the parties' instant motions.

[4] Although this fact is disputed, as the Court will discuss *infra*, the fact is not material for purposes of resolving the parties' instant motions.

[5] Section 85-16 of the Town Code, entitled "Certificates of existing use", specifically explains:

The Town Board recognizes that certain structures exist in the Town of Brookhaven which were erected prior to the adoption of the Zoning Code in 1937 and, therefore, do not have certificates of occupancy.  The Town Board also recognizes that other structures were erected between 1937 and June 30, 1959, when records of the

("CEU") to be issued for buildings whose records were destroyed.  (*Id.*)  Specifically, for "nonconforming use or structure[s] other than that for a sole single-family dwelling on a single lot[,]" CEUs are issued "by the Chief Building Inspector after a *public hearing and approval by the Zoning Board of Appeals* [("ZBA")]."[6]  (Plaintiff's Counterstatement of Material Fact Pursuant to Local Rule 56.1 ("Pl. 56.1 Reply"), Dt. 36-1, ¶ 6 (emphasis added).)

## I.    Factual Background

### A.    1979 CEU

On June 4, 1979, the prior owner of the Real Property requested a CEU from the Town of Brookhaven's Building Department.  (Def. 56.1, Dkt. 35-1, at 4.)  The CEU was issued on June 14, 1979 (the "1979 CEU"), and certified that the building was authorized "for use as [a] public garage[.]"  (1979 CEU, Dkt. 34-5.)  In January 2004, Plaintiff purchased the Real Property "in reliance on the CEU[,]" assuming that the CEU's reference to a "public garage" included "outside storage for motor vehicles for retail sale."  (Def. 56.1, Dkt. 35-1, at 5.)  The Real Property is in a district zoned J-2 Business, pursuant to Town Code § 85-425, which forbids "outdoor storage of motor vehicles . . . without a special permit from the Town of Brookhaven Board of Zoning Appeals."  (*Id.*)  Section 85-425 became effective August 5, 2016.  (Pl. 56.1 Reply, Dkt. 36-1, at

---

Building Division were destroyed, and, therefore, no certificates of occupancy are available for these structures.

Town Code, § 85-16(A).

[6] The parties also refer to the Zoning Board of Appeals as "Board of Zoning Appeals" or "BZA" intermittently throughout their motions.  (*See, e.g.*, Dkt. 35-8, at 1 (defining Zoning Board of Appeals as "ZBA"), *id.* at 8 ("Rather than apply to the *ZBA* for a [letter of correction], Plaintiff challenged the revocation of its [letter of correction] through an administrative appeal to the *BZA*." (emphasis added); *id.* ("The BZA Appeal, however, was not filed until March 22, 2019[.]").)  For purposes of this Memorandum and Order, the Court will use "ZBA" only for the sake of consistency.

2; *see also* Town Code § 85-425 (noting that the Section was amended on July 21, 2016 and effective August 5, 2016, accessible at https://ecode360.com/14623742).)

**B.     2016 Appearance Ticket**

In furtherance of a federal grant to clean up a stretch of the Montauk Highway, the Town issued appearance tickets to approximately 15 businesses, including Plaintiff, in August 2016. (Def. 56.1, Dkt. 35-1, at 5–6[7]; Pl. 56.1 Reply, Dkt. 36-1, at ¶¶ 9–10.)  Specifically, Plaintiff's business was ticketed for violating Section 85-425 of the Town Code, which required structures in J-2 zones to have a special permit for storing motor vehicles outside.  (Def. 56.1, Dkt. 35-1, at 6; *see also* Town Code § 85-425.)[8]

**C.     2017 LOC**

Plaintiff applied to the Town's Building Department for a letter of correction in February 2017, to "correct" the 1979 CEU so that it reflected the Real Property's usage as a "public garage[,] including auto body repair and storage and sales of motor vehicles in [an] open air car lot[.]" (Timothy Murphy[9] Decl., Dkt. 34-2, ¶ 11; Def. 56.1, Dkt. 35-1, at 6.)  On March 8, 2017, the Town's Chief Building Inspector issued an LOC ("2017 LOC") which stated that the Real Property

---

[7] The Court notes that Plaintiff asserts, and Defendant does not dispute, that the ticket was issued in August 2017.  (Def. 56.1, Dkt. 35-1, at 6.)  However, "2017" appears to be a typographical error as the appearance ticket shows that, in fact, it summoned Plaintiff to appear in the Suffolk County District Court on August 18, *2016*.  (*See* Rignola Decl. Ex. A, Dkt. 35-6 (copy of appearance ticket).)  The Court therefore assumes that the ticket was issued in August 2016, which is confirmed by the fact that Plaintiff requested its first letter of  correction ("LOC") in February 2017.

[8] The Court notes that Defendant alleges Plaintiff ultimately "pleaded guilty" to violating Section 85-425 as a result of this appearance ticket on January 18, 2018.  (Pl. 56.1 Reply, Dkt. 36-1, ¶ 12.)  However, Plaintiff disputes this assertion.  (*Id.*)  For the reasons discussed herein, this disputed fact is not material for the purposes of resolving the parties' instant motions.

[9] Timothy Murphy is the President of TLM Suffolk.  (Murphy Decl., Dkt. 34-2, ¶ 1.)

could be used "as a public garage including auto body repair and storage and sale of motor vehicles in [an] open air car lot[.]"  (Def. 56.1, Dkt. 35-1, at 7.)

### D.    2018 Revocation of 2017 LOC

On March 23, 2018, the Town's Department of Law issued a letter (the "March 2018 Advisory Letter") advising Plaintiff that "the [LOC] was issued in error administratively" because only "[t]he [ZBA] has the authority to issue a CEU[.]"  (Defs. 56.1, Dkt. 35-1, at 7.)  The Department of Law went on to advise Plaintiff that "[i]f an owner is seeking an amendment or modification of [a CEU], they must apply to the [ZBA] for such relief" because "[t]he Building Department cannot administratively issue a [LOC] on a CEU."  (*Id.*)  Moreover, the March 2018 Advisory Letter opined, "even if the Building Department could issue the [LOC] administratively, it was still issued in error" because "[i]t is the Chief Building Inspector's interpretation that 'Public Garage' does not contemplate outdoor storage and said interpretation was upheld by the 6th District Court in the case of People v. Tinsley on July 14, 2016."  (*Id.* at 8)

## II.    Local Administrative Procedural History

### A.    March 2018 Revocation Hearing

On March 28, 2018, Plaintiff attended a Letter of Correction Revocation Hearing ("Revocation Hearing") before Hearing Officer Kathleen C. Koppenhoefer ("Koppenhoefer"). (Def. 56.1, Dkt. 35-1, at 8.)  The Town claimed that Plaintiff's 2017 LOC was both procedurally and substantively faulty:

> KOPPENHOEFER: My understanding is that we are here today for the purposes of and I'm going to ask [the Town] please to state the purpose because I have no paperwork in front of me.
>
> [ASSISTANT TOWN ATTORNEY]:  A[n] [LOC] was issued on March 8, 2018, we believe in error and therefore, we are conducting this revocation hearing of the letter of correction.
>
> . . . .

KOPPENHOEFER: Okay.  All right.  And the contesting is?

[ASSISTANT TOWN ATTORNEY]: The Town believes we issued this in error on two different bases.  The first basis being that administratively we never had the authority from the building department to issue the [LOC].  Originally it was a [CEU] that was provided for the property.  They were asking for an amendment in a[n] [LOC] for the [CEU] for a nonconforming use and *if there's a nonconforming use on a piece of property, it's not the building department that can administratively issue a[n] [LOC], they would then have to go to the [ZBA] to obtain a[n] [LOC].*  So we believe it was issued in error administratively as well as we believe it was administered in error based on the law.  The definition of a public garage in 1959 was that in which it was contemplated for indoor storage within a building.  [Plaintiff] has asked for a[n] [LOC] for outdoor storage and use as an auto body repair shop, which those things didn't exist in 1959. . . .

(Defs. 56.1, Dkt. 35-1, at 8–9 (emphasis added).)

On May 8, 2018, Koppenhoefer issued her opinion which was "for the Chief Building Inspector to review and make his recommendation to the Zoning Board of Appeals." (Koppenhoefer Findings, Dkt. 34-16, at ECF 2–3.)[10]  According to Koppenhoefer, the Revocation Hearing was held "to determine the validity of the [March 2018 Advisory Letter] issued by the Town of Brookhaven revoking the issuance of an amendment to [the 1979] CEU[.]"  (*Id.* at 2.) On the Town's procedural claim, she found that "[p]lainly . . . Mr. Fragola [the Building Inspector who issued the 2017 LOC] had *no authority to take the action*[,] thus *the Town is empowered to revoke an untrue document*."  (*Id.* (emphasis added).)  But regarding the Town's substantive claim, she opined:

> HOWEVER, in my opinion, that is a surface issue.  There is far more at stake than a revocation of a document supplied by an unauthorized person. . . . In my opinion, the core of the problem is the interpretation of the words *Public Garage*.  The contention that the permission to operate the business in accordance with the CEU should be predicated on the <u>definition</u> of the words *Public Garage* as <u>that term is defined today</u> is not justifiable.

---

[10] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(*Id.* at ECF 2–3.)  On July 12, 2018, the Town officially revoked the 2017 LOC.  (Def. 56.1, Dkt. 35-1, at 14.)

## B.    2019 ZBA Hearings

On March 22, 2019, Plaintiff submitted an application to the ZBA (ZBA Hr'g Trs., Dkt. 34-19, at 27:10–20), stating a single request: "[r]elief of Administrative Decision on the Denial of Letter of Correction on CEU # 11719 [(the 1979 CEU)][.]"  (ZBA Appl., Dkt. 34-18, at ECF 2.)[11] The ZBA held a hearing on May 22, 2019, where Plaintiff's counsel "objected to the refusal of the ZBA to accept an application for a letter of correction."  (Def. 56.1, Dkt. 35-1, at 15.)   The following exchange took place regarding the issue:

> [Plaintiff's attorney]: [W]e are not just appealing the decision [on the revocation of the 2017 LOC].  We're also putting in an application for the letter of correction, because if [the Chief Building Inspector] had not had the authority to issue it, as he states and as the Department of Law has stated, then our—our avenue . . . is to apply to the Zoning Board of Appeals which is what we're also doing.  We have the ability to put in whatever we need on the record in order to establish that application, and that's what we're doing here today.
>
> [ZBA Chairman]: You do have the ability, but we are required to notice to the public, an application for a certificate of existing use for a . . . different use than . . . what's there.  *So those two applications would be different.  I will tell you what I have before me is only the . . . review of [the Chief Building Inspector's] decision*

---

[11] Plaintiff alleges that it "attempted to file an application before the [ZBA] to both 1) seek a review of the revocation of the Letter of Correction and/or 2) apply for a letter of correction." (Def. 56.1, Dkt. 35-1, at 14–15 (citing Timothy Murphy Decl., Dkt. 34-2, ¶ 26).)  Plaintiff then claims that "[t]he [ZBA] would only accept an application for an administrative review of the revocation of the letter of correction . . . and refused to allow Plaintiff to file an application for a letter of correction despite the claims of the Department of Law that only the [ZBA] can issue letters for certificates of existing use." (*Id.* at 15 (citing ZBA Application, Dkt. 34-18).)  The Court has reviewed both the Murphy Declaration and the ZBA Application and sees no plausible support for Plaintiff's assertion that the ZBA "refused" to accept Plaintiff's application for an LOC. Rather, a review of Plaintiff's ZBA Application makes it clear that on the application form, Plaintiff wrote "Relief of Administrative Decision" as the "variance[] requested[.]"  (*See* ZBA Application, Dkt. 34-18.)  Indeed, the application is entirely devoid of anything that would indicate Plaintiff also sought an issuance of a new LOC.  (*See id.*)

> *to revoke [the 2017] letter of correction.*  [The current ZBA application] notices
> nothing to the public for anything else.

(ZBA Hr'g Trs., Dkt. 34-19, at 29:11–30:7 (emphasis added); *see also id.* at 28:16–19 (ZBA Chairman noting that Plaintiff's ZBA application "doesn't seek a C.E.U. for outdoor car sales" and that only "it seeks a review of [the] determination that the [2017 LOC] should be revoked").) During the hearing, the ZBA Chairman also had an "off-the-record" conversation with Plaintiff's counsel, advising Plaintiff "that it would need to file a second application for any other relief it was requesting after the existing application had been determined."  (Compl., Dkt. 1, at ¶ 48; *see also* ZBA Hr'g Trs., Dkt. 34-19, at 31:19–25 (ZBA Chairman explaining on the record that he and Plaintiff's counsel had an off-the-record conversation about "reposting of the parcel" so that Plaintiff would not have to come back for another hearing).)  The hearing was continued to July 10, 2019.  (ZBA Hr'g Trs., Dkt. 34-19, at 307.)

During the July 10th session, Plaintiff's attorney claimed that "[s]ince the last hearing, Ms. Quatrale, agent for [Plaintiff][,] attempted to file an application with the [ZBA] for a letter of correction, and she was advised by the chairman that the [ZBA] does not accept applications for letters of correction."  (*Id.* at 309:13–20; *see also id.* at 310:13–19 ("[Plaintiff] applied for a letter of correction from the building department.  The building department revoked that letter of correction stating that *this* board was the adequate remedy.  And now *this* board is telling him that you're not the adequate remedy." (emphasis added)).)  The Chairman at the hearing declined to review the issue, explaining:

> That's not the issue before us currently.  There are, again, there's other avenues of relief that can be chosen by [Plaintiff] with you guiding them that could obtain the relief they request.  I only have before me what I have, which is your application in support of this relief with nothing from the building department.  So this board is forced to decide what we have before it.  *I believe it was more the timing of the filing that I had a discussion with Ms. Quatrale with [sic] and nothing more.*
>
> . . . .

8

> *I have one application on this parcel pending before us.  Once it's decided, then another filing can occur.*

(*Id.* at 310:20–311:17 (emphasis added).)  The Chairman then offered to have Ms. Quatrale speak to the ZBA's clerk[12] for assistance.  (*Id.* at 311:23–312:3.)

On July 15, 2019, the ZBA issued a decision denying Plaintiff's application for relief from the 2017 LOC's revocation, reasoning that the application was untimely because it was filed more than six months after the deadline to appeal the revocation.  (ZBA Denial, Dkt. 34-20, at ECF 2 (reasoning that the 2017 LOC was revoked on July 6, 2018, thus Plaintiff had until September 4, 2018 to appeal the revocation but did not file the ZBA application until March 22, 2019).)

### C.   Article 78 State Court Appeal

On August 13, 2019, Plaintiff initiated an Article 78 proceeding in Suffolk County Supreme Court to review the ZBA's denial.[13]  (Pl. 56.1 Reply, Dkt. 36-1, ¶¶ 23, 25.)  Plaintiff alleged the following claims: (1) that the ZBA's actions were "arbitrary and capricious," in violation of the Plaintiff's "rights to due process under the United States and New York Constitutions" (Sendrowitz Decl., Dkt. 35-4, ¶ 22 (Plaintiff's Article 78 Petition)); (2) the revocation of the 2017 LOC constituted a "taking" "without just compensation" (*id.* ¶ 23); and (3) the ZBA's actions violated Plaintiff's equal protection rights because Defendant continues to issue LOCs to CEUs for others (*id.* ¶ 24).  As relief, Plaintiff requested: (1) annulling and setting aside the ZBA's June 25, 2019 decision and granting the relief requested in Plaintiff's ZBA

---

[12] (*See* ZBA Hr'g Trs., Dkt. 34-19, at 8:15 (identifying "Clerk Riccardi").)

[13] Under New York law, Article 78 proceedings can be brought in state courts to review administrative decisions.  *See* N.Y. C.P.L.R. §§ 7801–06 (McKinney 2023)*, Karamoko v. N.Y.C. Hous. Auth.*, 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001).

application;[14] or in the alternative, (2) directing the ZBA to grant Plaintiff's application for a new LOC;[15] and (3) further relief which the court may have deemed proper, just, and equitable.  (Pl. Reply, Dkt. 36-1, ¶ 25.)

Justice David T. Reilly issued a decision on January 27, 2020, denying Plaintiff's Article 78 petition.  (Art. 78 Decision, Dkt. 34-21, at 4.)  Specifically, he made the following findings regarding whether the 2017 LOC was properly issued and revoked:

> [T]here is no evidence in the record before the Court that the Chief Building Inspector had the authority in the first instance to issue the letter of correction to the petitioner's CEU.  While the authority rests on that individual to issue letters of correction *to certificates of occupancy*, the Brookhaven Town Code does not contain a similar provision with respect to certificates of existing use.  *Rather, the Code provides that a certificate of existing use may not issue unless the property is first inspected by the Chief Building Inspector and after a public hearing and the approval of the ZBA.  It does not appear that process was followed here.*

(*Id.* at 3 (emphasis added).)[16]

_____

[14] Plaintiff's ZBA application requested only the following as relief: "Relief of Administrative Decision on the Denial of Letter of Correction on CEU #11719[.]"  (ZBA Application, Dkt. 34-18.)

[15] Although Plaintiff's Article 78 petition claimed that during the ZBA hearing, Petitioner's counsel "advised the ZBA that, while the [ZBA] application only stated that it was for the purpose of appealing the letter of correction, the application should also include an application for a letter of correction" and that Plaintiff's attorney "advises [it] that, based upon existing case law, the ZBA had the authority to expand the current application to include this relief"—Plaintiff does not cite any case law supporting such a proposition.  (*See* Sendrowitz Decl., Dkt. 35-4, ¶ 20.)  To the contrary, the Suffolk County Supreme Court expressly rejected this argument, explaining that Plaintiff's original ZBA application could not be expanded to include a request for a new LOC during the ZBA hearing because Plaintiff had not followed Town Code § 85-55.  (Art. 78 Decision, Dkt. 34-21, at 3–4; *see also* Town Code § 85-55(F)(1) ("For applications involving variances or special permits on commercial or industrial parcels, [at least one] poster must be . . . conspicuously posted along each street frontage of the property which is the subject of the application at least 10 days prior to the date set for the public hearing before the Board of Zoning Appeals. . . . This ten-day posting requirement shall be required for all applications submitted on or after the effective date of this amendment.").)

[16] Justice Reilly cited the following Town Code provisions as support:

Justice Reilly then made the following findings regarding the timeliness of Plaintiff's ZBA application:

> New York State Town Law §267-a(5) provides, in pertinent part, that an appeal from an administrative decision made by the administrative official charged with the enforcement of any ordinance or local law shall be taken *within sixty days after the filing of the determination* (*see also* Town Law §267-b). Here it is clear that petitioner failed to submit the application to appeal the Chief Building Inspector's determination in a timely manner. That determination was filed on July l6, 2018 and the application before the ZBA was not filed until March 22, 2019, clearly beyond the sixty-day requirement.

(*Id.* at 3 (emphasis added).) Lastly, like the ZBA Chairman in the ZBA hearings below, Justice Reilly did not construe Plaintiff's ZBA application as asking for both (1) relief from the revocation of the 2017 LOC, and/or (2) the ZBA's issuance of a new LOC. Rather, Justice Reilly found that Plaintiff's ZBA application asked only for the first form of relief and that therefore the ZBA was without jurisdiction to address the latter:

> To the extent that petitioner argues that its application was hybrid in nature and also sought the ZBA's issuance of a letter of correction, *that relief was not specifically delineated in the notice required by Brookhaven Town Code §85-55(F)(a)*. That provision states that notice must be posted on the subject property with a "brief

---

> Presently, the Brookhaven Town Code §85-16, entitled, "Certificates of Existing Use," provides in pertinent part, "No non-conforming use or structure other than that for a sole singl[e]-family dwelling on a single lot shall be maintained or renewed without a certificate of existing use having first been issued by the Chief Building Inspector *after a public hearing and approval by the Zoning Board of Appeals*." Neither the petitioner nor respondents have submitted to the Court any statute to the contrary which may have been in effect at the time petitioner's predecessor in interest first obtained the CEU. What is noteworthy here is the fact that the Brookhaven Town Code provides, at §85-17, entitled "Letters of Correction," that the Chief Building Inspector is hereby authorized to issue letters of correction to *certificates of occupancy* so long as based on reliable evidence similar to that required for a certificate of existing use demonstrating that the subject structure(s) complied with the requirements applicable at the time the certificate of occupancy was issued." . . . *The Code is silent as to the authority of the Chief Building Inspector to issue [] letters of correction to certificates of existing use*.

(Art. 78 Decision, Dkt. 34-21, at 3 (emphasis added).)

explanation of the proposed variance or special permit requested."  Here, it appears that petitioner only noticed the revocation of the letter of correction as the requested relief.  *Accordingly, the ZBA was without jurisdiction to hear the petitioner's request that the ZBA issue a letter of correction*[.]

(*Id.* at 3–4 (emphasis added).)   The state court then expressly informed Plaintiff that "[t]his dismissal should not, however, pre-empt petitioner from seeking a letter of correction in the proper manner pursuant to Brookhaven Town Code §85-16." (*Id.* at 4.)[17]

## III.   Instant Federal Action

Five months after the Article 78 decision, on June 8, 2020, Plaintiff initiated the instant action before the Honorable Raymond J. Dearie.  (Compl., Dkt. 1.)  The action was reassigned to the undersigned on October 31, 2022.  (10/31/2022 Docket Entry.)  The parties filed their cross-motions for summary judgment on January 11, 2023.  (Dkts. 34–37.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc., v. Salvino*, 542 F.3d 290, 309.  The Court also construes any disputed facts

---

[17] As explained above, "the Brookhaven Town Code §85-16, entitled, 'Certificates of Existing Use,' provides in pertinent part, 'No non-conforming use or structure other than that for a sole singl[e]-family dwelling on a single lot shall be maintained or renewed without a certificate of existing use having first been issued by the Chief Building Inspector *after a public hearing and approval by the Zoning Board of Appeals*.'" (Art. 78 Decision, Dkt. 34-21, at 3 (emphasis added).)

in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (citation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted).

## DISCUSSION

Plaintiff's Complaint brings six causes of action, seeking declaratory, injunctive, and monetary relief. Count one of Plaintiff's Complaint requests a "declaratory judgment and injunction" (Compl., Dkt. 1, at 17), asking the Court to "declar[e] the CEU to include the use of the Real Property for outdoor storage of motor vehicles for retail sale" (*id.* ¶ 70), and to issue a preliminary and permanent injunction "preventing the Town of Brookhaven from enforcing the Code to prevent the valid use of the Real Property for outdoor storage and motor vehicles for retail sale without a permit from the Town of Brookhaven [ZBA]" (*id.* ¶ 71). However, neither

13

declaratory nor injunctive relief is a standalone cause of action; rather, it is a remedy. *See Christe v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action."). Thus, the Court construes Plaintiff's "Count 1" as a prayer for relief, rather than a standalone cause of action.

In Count 2, Plaintiff brings a § 1983 claim, alleging that Defendant violated its substantive due process rights under the Fourteenth Amendment because "[t]he Town has used its' [sic] enforcement power to take some or all of . . . Plaintiff's constitutionally-protected property rights[;]" i.e., "the use of the Real Property for outdoor storage of motor vehicles for retail sale." (Compl., Dkt. 1, ¶ 73, 76.) As relief, Plaintiff seeks monetary damages, expert fees, and attorney's fees and costs. (*Id.* ¶¶ 82–84.)

In Count 3, Plaintiff raises a second § 1983 claim, alleging that Defendant violated its Fifth and Fourteenth Amendment procedural due process rights by, *inter alia*, "depriv[ing] . . . Plaintiff of its property without a meaningful opportunity to be heard" and "prohibit[ing] [Plaintiff] from using the Real Property according to its' [sic] valid and vested rights therein." (*Id.* ¶¶ 88–89.) Specifically, Plaintiff alleges that Defendant is "enforc[ing] its' [sic] Code against [] Plaintiff despite the lawfully issued CEU which included the use of the property for outdoor storage of motor vehicles or retail sale." (*Id.* ¶ 90.) Plaintiff seeks monetary damages, expert fees, and attorney's fees and costs as relief. (*Id.* ¶¶ 93–95.)

In Count 4, Plaintiff alleges a regulatory taking under the Fourteenth Amendment, based on Defendant's "refusal to recognize Plaintiff's valid and vested right to use the Real Property for the outdoor storage of motor vehicles notwithstanding the duly issued CEU[.]" (*Id.* ¶ 98.) Plaintiff further claims that the 2016 appearance ticket, the revocation of the 2017 LOC, and the ZBA's refusal to accept an application for a new LOC, "all constitute takings[.]" (*Id.*)

In Count 5, Plaintiff brings another § 1983 claim, alleging "selective enforcement" in violation of the Fourteenth Amendment against Plaintiff based, *inter alia*, on Plaintiff being "singled out" for the 2016 appearance ticket and the revocation of Plaintiff's 2017 LOC even though "the Chief Building Inspector has continued to issue [LOCs] for other property owners in the Town to correct and/or modify their previously issued Certificates of Existing Use." (*Id.* ¶¶ 124–25). Plaintiff seeks monetary damages, expert fees, and attorney's fees and costs as relief. (*Id.* ¶¶ 136–38.)

Lastly, in Count 6, Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988. (*Id.* ¶ 140.) Again, a request for attorney's fees is a remedy, not a standalone cause of action. *See Brown v. Oneida County*, No. 15-CV-849, 2016 WL 4275727, at *9 (dismissing the plaintiff's § 1988 cause of action for attorney's fees because "attorney fees are a remedy, not a cause of action"). Section 1988 grants attorney's fees to a prevailing party under §§ 1981–83, and here, Plaintiff has already requested attorney's fees in conjunction with each of its § 1983 claims above. Thus, the Court dismisses Plaintiff's purported standalone sixth cause of action for attorney's fees. *See id.*

At this stage of the proceedings, Plaintiff's requested relief and four causes of action[18] all require the Court to conclude that a jury could find that the ZBA has refused to issue a new LOC or recognize the 1979 CEU as including "auto body repair and storage and sale of motor vehicles in open air car lot." However, for the reasons discussed below, the Court finds that, based on the undisputed evidence, Defendant has not yet made such a refusal. Thus, Defendant has established, as a matter of law, that Plaintiff's causes of action are not yet ripe for review. Additionally, to the extent that Plaintiff's fifth cause of action cursorily references the ZBA's revocation of the 2017

---

[18] As explained *supra*, although Plaintiff styles its "Count 1" and "Count 6" as causes of action, they are remedies. Thus, Plaintiff only properly alleges four causes of action in its Complaint.

LOC, that claim is procedurally barred because the issue of the revocation has been finally determined in the Article 78 proceeding below.  (*See* Article 78 Decision, Dkt. 34-21.)  Thus, Defendant's motion for summary judgment is granted as to all of Plaintiff's causes of action.

## I.    Ripeness

### A.    Legal Standard

"In order for claims to be justiciable under Article III, courts have long recognized that the controversy, as an initial matter, must be ripe."  *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000).  Specifically, "[i]n the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action."  *Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 148 (E.D.N.Y. 2006) (quoting *Sunrise Dev., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999)).  "In regulatory taking cases, the ripeness requirement asks whether the government 'has reached a "final" decision.  After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation.'"  *835 Hinesburg Rd., LLC v. City of S. Burlington*, No. 22-CV-58, 2023 WL 2169306, at *10 (D. Vt. Jan. 27, 2023) (citation omitted).  When a plaintiff brings due process and equal protection claims that "arise out of the same factual events" as the plaintiff's takings claim, "the Court will apply the same ripeness inquiry" to all three sets of claims. *Country View Ests.*, 452 F. Supp. 2d at 149; *Kowalczyk v. Barbarite*, 594 F. App'x 690, 692 (2d Cir. 2014) ("[T]his Court has made clear that procedural due process claims are unripe if they are based on the same set of facts as unripe substantive due process and takings claims.").

### B.    Analysis

The final-decision requirement in Takings Clause claims mandates the following:

[T]he [plaintiff] [must] obtain a final, definitive position as to the application of the relevant zoning law to the property from the municipal entity responsible for those laws. . . . That is to say, "[the] plaintiff cannot seek federal court review of a zoning

16

ordinance or provision until it has submitted at least one meaningful application for a variance" from the restrictions of the land-use laws.

*Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017) (quoting *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. Of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013)).

Here, there is no genuine factual dispute that Plaintiff never properly submitted an application to the ZBA requesting a new LOC, and thus never received a final decision on such an application.  (Pl. 56.1 Reply, Dkt. 36-1, ¶ 31.)  Rather, the record is replete with administrative and judicial officers making clear to Plaintiff and its counsel that Plaintiff's sole submitted ZBA application only challenged the revocation of the 2017 LOC and did *not* request a new LOC.  (*See, e.g.*, ZBA Hr'g Trs., Dkt. 34-19, at 29:11–30:7 (ZBA Chairman advising Plaintiff that "those two applications [reversing revocation versus issuing a new LOC] would be different.  I will tell you what I have before me is only the . . . review of [the Chief Building Inspector's] decision to revoke [the 2017] letter of correction.  [The current ZBA application] notices nothing to the public for anything else."); Article 78 Decision, Dkt. 34-21, at 3–4 ("To the extent that petitioner argues that its application was hybrid in nature and also sought the ZBA's issuance of a letter of correction, that relief was not specifically delineated in the notice required by Brookhaven Town Code §85-55(F)(a). . . . Accordingly, the ZBA was without jurisdiction to hear the petitioner's request that the ZBA issue a letter of correction[.]").)  Even Hearing Officer Koppenhoefer's memorandum, which Plaintiff relies so heavily on, made clear that the only issue before her was "to determine the validity of the Letter of Revocation issued by the Town of Brookhaven revoking the issuance of an amendment to [the 1979] CEU," as to which she found that the 2017 LOC was "plainly" issued erroneously.  (Koppenhoefer Findings, Dkt. 34-16, at ECF 2.)  Moreover, Plaintiff was advised at every turn how to properly submit a ZBA application for a new LOC.  (*See, e.g.*, Compl.,

Dkt. 1, ¶ 48 (Plaintiff admitting that during the hearing, the ZBA Chairman had an "off-the-record" conversation with Plaintiff's counsel, advising Plaintiff "that it would need to file a second application for any other relief it was requesting after the existing application had been determined"); Article 78 Decision, Dkt. 34-21, at 4 (state court expressly advising the plaintiff that "[t]his dismissal should not, however, pre-empt petitioner from seeking a letter of correction in the proper manner pursuant to Brookhaven Town Code §85-16").)

In opposition, Plaintiff argues that it attempted on two separate occasions to file a ZBA application and was advised that the ZBA does not accept applications for this relief, citing to TLM Suffolk President Timothy Murphy's Declaration. (Dkt. 36, at 14 (citing Murphy Decl., Dkt. 34-2, ¶¶ 46–47, 49).)  However, Plaintiff misconstrues the record.  The cited portions of Mr. Murphy's Declaration simply reference the exchanges during the ZBA hearings, in which the Chairman declined to amend the ZBA Application to add a request for a new LOC because Plaintiff had not publicly-noticed that request as required by the Town Code.  (Murphy Decl., Dkt. 34-2, ¶¶ 46–47, 49.)  That is, the ZBA Chairman did not advise Plaintiff that the ZBA *does not accept applications* for LOCs; rather, Plaintiff's counsel was advised that Plaintiff's attempt to tack on a request for a new LOC during the pendency of an ongoing revocation challenge was procedurally improper.  Thus, Plaintiff's reliance on its past improper applications to the ZBA does not cure the undisputed fact that Plaintiff has, to date, not yet submitted a proper ZBA application requesting a new LOC.[19]

_____

[19] To the extent that Plaintiff is arguing that Defendant is "refusing" to let it file a ZBA application for a new LOC, Plaintiff points only to exchanges during the ZBA hearings as evidence of Defendant's purported obstruction.  (*See* Dkt. 34-3, at 10–11.)  However, as discussed at length, the ZBA hearings transcript reflect that, contrary to refusing Plaintiff's request to file a new LOC, the ZBA Chairman repeatedly advised Plaintiff of the proper procedures to follow—even offering to have Plaintiff's agent, Ms. Quatrale, speak with the Clerk of the ZBA to help with filing a new

Lastly, Plaintiff summarily argues that "[t]here is simply no reason for [Plaintiff] to file an application for a letter of correction" and that "there is no authority in the Brookhaven Town Code for the ZBA to issue a letter of correction and any such application would be futile." (Dkt. 36, at 14.)[20]  However, it is undisputed that the opposite is true—Plaintiff concedes that "[t]he [ZBA] failed to issue a determination regarding [Plaintiff's] application for a letter of correction directly from the [ZBA]" (Compl., Dkt. 1, ¶ 54), and that Section 85-16 of the Town Code mandates that the ZBA must approve CEUs (Pl. 56.1 Reply, Dt. 36-1, ¶ 6).  Thus, Plaintiff's takings claim is not yet ripe for review, and its related procedural due process claims, substantive due process claims, and equal protection claims based on the same factual events—the ZBA's fictitious refusal to issue a new LOC—are also not ripe.  *Country View Ests.*, 452 F. Supp. 2d at 149.

## II.    Res Judicata and Collateral Estoppel

### A.    Legal Standard

#### 1.    Res Judicata

"Under New York law, the doctrine of res judicata or claim preclusion bars future litigation of claims that were or could have been raised in a prior proceeding where that prior proceeding resulted in a final judgment on the merits."  *Karamoko*, 170 F. Supp. 2d at 376–77 (citation omitted).  "[R]es judicata bars an action if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the

---

application after Ms. Quatrale's attempted filing was unsuccessful.  (*See* ZBA Hr'g Trs., Dkt. 34-19, at 309–12.)

  [20] Plaintiff also argues that "under the Koppenho[e]fer determination, the [1979] CEU allows for the current use of the TLM Property" and thus applying for a new LOC is unnecessary. (Dkt. 36, at 14.)  However, as discussed above, the Koppenhoefer determination was only a review of the revocation of the 2017 LOC (Koppenhoefer Findings, Dkt. 34-16, at ECF 2); it was not a "final, definitive position" in response to a "meaningful application for a variance" to the ZBA and therefore it is not relevant to the ripeness analysis.  *Islamic Cmty. Ctr.*, 258 F. Supp. 3d at 416.

claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Specifically, New York's "transactional approach to res judicata," instructs that "if claims arise out of the same factual grouping[,] they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief."  *Kern*, 857 F. App'x at 692 (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)).  However, "[w]hen the prior proceeding is brought pursuant to Article 78 of the CPLR, . . . the application of res judicata is subject to certain important limitations," namely that it does not bar parties from "bringing claims for damages under § 1983" because "Article 78 courts are courts of limited jurisdiction and are unable to award monetary damages."  *Karamoko*, 170 F. Supp. 2d at 377.

### 2.   Collateral Estoppel

Collateral estoppel "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).  "Under New York law, collateral estoppel bars re[-]litigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue."  *Id.* at 281–82 (citation omitted).

20

**B.     Analysis**

Plaintiff's "selective enforcement" claim was already squarely raised and addressed in the Article 78 proceeding and is thus barred by res judicata and collateral estoppel.[21]  In the Article 78 petition, Plaintiff alleged the following claims: (1) that the ZBA's actions were "arbitrary and capricious" in violation of the Plaintiff's "rights to due process under the United States and New York Constitutions"; (2) the revocation of the 2017 LOC constituted a "taking" "without just compensation"; and (3) the ZBA's actions *violated Plaintiff's equal protection rights because Defendant continues to issue LOCs to CEUs for others*.  (Sendrowitz Decl., Dkt. 35-4, ¶¶ 22–24.)  In response, the state court made a final judgment on the merits that the revocation of Plaintiff's 2017 LOC was proper.  (*See* Art. 78 Decision, Dkt. 34-21, at 3 ("[T]here is no evidence in the record before the Court that the Chief Building Inspector had the authority in the first instance to issue the letter of correction to the petitioner's CEU.").)  Here, Plaintiff's fifth cause of action under § 1983 raises the exact same "selective enforcement" claim as the one raised in the Article 78 petition, stating in relevant part that Defendant "singled out" Plaintiff when revoking the 2017 LOC because "the Chief Building Inspector has continued to issue [LOCs] for other property owners in the Town to correct and/or modify their previously issued Certificates of Existing Use." (Compl., Dkt. 1, ¶¶ 124–25).  As relief, Plaintiff seeks declaratory relief, injunctive relief, and monetary damages.  (*Id.* ¶¶ 66–71, 136–38.)

Based on this record, res judicata clearly precludes Plaintiff's claims for injunctive and declaratory relief because there is no question that (1) the Article 78 proceeding was an adjudication on the merits, (2) Plaintiff was a party to that proceeding, and (3) Plaintiff's "selective

---

[21] The Court notes that the portions of Plaintiff's takings and due process claims that are based on Defendant's revocation of the 2017 LOC are also barred by res judicata and collateral estoppel for the reasons discussed below.

enforcement" was raised in that proceeding. *Kern*, 857 F. App'x at 692. Additionally, Plaintiff's request for monetary damages is barred by collateral estoppel. There is no dispute that an identical "selective enforcement" issue was necessarily decided in the Article 78 proceeding because Justice Reilly found that "there [was] no evidence . . . that the Chief Building Inspector had the authority . . . to issue" the type of LOC which Plaintiff sought and alleges others continue to receive. (Art. 78 Decision, Dkt. 34-21, at 3.) It is undisputed that Plaintiff was represented by counsel throughout the Article 78 proceedings (*see* Sendrowitz Decl., Dkt. 35-4, at ECF 2), and Plaintiff does not allege that it did not have an opportunity to fully and fairly litigate its "selective enforcement" claim regarding the 2017 LOC revocation (*see* Pl. Reply, Dkt. 36, at 6–8)—nor would the Court find any merit to such an argument. Thus, Plaintiff's request for monetary damages pursuant to the "selective enforcement" claim is barred by collateral estoppel. *Evans*, 469 F.3d at 281.

\*\*\*

In sum, the Court finds that there are no genuine disputes as to any material fact that would entitle Plaintiff to proceed with its claims, and that Defendant is entitled to judgment as a matter of law because Plaintiff's claims are either unripe or barred by res judicata and collateral estoppel.

## CONCLUSION

For the reasons above, the Court grants Defendant's cross-motion for summary judgment, denies Plaintiff's motion for summary judgment, and dismisses all counts in the Complaint. Specifically, Plaintiff's claims predicated on the revocation of the 2017 LOC are dismissed with prejudice based on res judicata and collateral estoppel. Plaintiff's claims regarding Defendant's refusal to issue a new LOC are dismissed without prejudice as they are not yet ripe for review. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 27, 2023
        Brooklyn, New York